# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
|         Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 12-00379-01-CR-W-HFS |
| Jose Luis Ramirez, | ) | |
| | ) | |
|         Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS WITH SUGGESTIONS (Doc. #212) filed on August 7, 2014, by defendant Jose Luis Ramirez ("Ramirez"). On November 7, 2014, the undersigned held an evidentiary hearing on Ramirez' motion. Ramirez was present and represented by his counsel, Mark A. Thomason. The government was represented by Assistant United States Attorney Catherine A. Connelly. At the evidentiary hearing, testimony was given by one witnesses: Special Agent Shawn Kirby, with the United States Immigration and Customs Enforcement ("ICE"). Additionally, the following exhibits were admitted into evidence:

| | |
|---|---|
| Gov't Ex. #1 | [Wiretap Application, 8/31/2012] |
| Gov't Ex. #1A | [Wiretap Order, 8/31/2012] |
| Gov't Ex. #1B | [Wiretap Affidavit] |
| Gov't Ex. #1C | [Wiretap Application, 10/5/2012] |
| Gov't Ex. #1D | [Wiretap Order, 10/5/2012] |
| Gov't Ex. #2 | [Wiretap Order, 9/25/2012] |
| Gov't Ex. #2A | [Wiretap Affidavit] |
| Gov't Ex. #2B | [Wiretap Application, 10/30/2012] |
| Gov't Ex. #2C | [Wiretap Order, 10/30/2012] |
| Gov't Ex. #3 | [Wiretap Application, 11/2/2012] |
| Gov't Ex. #3A | [Wiretap Order, 11/2/2012] |
| Gov't Ex. #3B | [Wiretap Affidavit] |
| Gov't Ex. #3C | [Wiretap Application, 12/13/2012] |
| Gov't Ex. #3D | [Wiretap Order, 12/13/2012] |
| Def't Ex. #505 | [Wiretap Application, 9/25/2012] |

1

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

**PROPOSED FINDINGS OF FACT**

1. Shawn Kirby is a Special Agent with the United States Immigration and Customs Enforcement working as a criminal investigator assigned to investigations of contraband smuggling. Tr. at 11-12.

2. SA Kirby was the lead investigator in the ICE investigation of Ramirez. Tr. at 12.

3. The ICE investigation began in 2009 and involved suspicions of a large trafficking network operation to smuggle large amounts of illegal drugs and currency to and from Mexico. Tr. at 12-14.

4. Ramirez became a target in the ICE investigation in January 2012. Tr. at 14.

5. As part of the ICE investigation involving Ramirez, investigators sought and obtained four wiretaps and three extensions. Tr. at 14.

6. The first 30-day wiretap order (for two target telephones) was obtained when the Court[1] signed an order on August 31, 2012. Tr. at 22, 23.

7. Interceptions under the order began on August 31, 2012, and ended on Saturday, September 29, 2012 (with regard to one target telephone – an extension was sought on the target telephone). Tr. at 23, 25.

8. At ICE, once a wiretap is terminated, an ICE Technical Enforcement Officer or Designated Technical Agent must finalize the recording disks, eject them from the system, and deliver them to the agent to present to the Court for sealing. Tr. at 19-20.

9. An ICE Technical Enforcement Officer or Designated Technical Agent was not available to finalize the recording disks until Monday, October 1, 2012. Tr. at 25.

10. On Tuesday, October 2, 2012, SA Kirby was scheduled to be the supervisor in the ICE wire room. Tr. at 26-27.

11. On Wednesday October 3, 2012, and Thursday, October 4, 2012, the Court was unavailable. Tr. at 27.

12. With regard to the concluded telephone target, an application to seal was filed with the Court and signed on Friday, October 5, 2012. Tr. at 24.

---

[1] The Honorable Fernando J. Gaitan, Jr., Senior District Judge, United States District Court for the Western District of Missouri.

13. A second 30-day wiretap order (for a third telephone target) was obtained when the Court signed an order on September 25, 2012.  Tr. at 28.

14. Interceptions under the order began on September 26, 2012, and ended on Saturday, October 25, 2012.  Tr. at 28.

15. On Tuesday, October 30, 2012, SA Kirby applied for and the Court entered an order to seal the recordings intercepted on the third telephone target.  Tr. at 32-33.

16. Prior to October 25, 2012, SA Kirby began the process of obtaining an extension of the wiretap on the third telephone target, but DOJ permission to extend was not received prior to October 25, 2012.  Tr. at 29-31.

17. After receiving DOJ permission to extend the wiretap on the third telephone target, SA Kirby applied for a 30-day extension and the Court signed the order on November 2, 2012.  Tr. at 34.

18. Interception under the extension order began on November 2, 2012, and ended on Tuesday, November 27, 2012.  Tr. at 34-35.

19. The interceptions were ended before the conclusion of the 30 days under the extension order because law enforcement officers believed they were at a point they could do a successful enforcement operation (they conducted a search warrant for the residence of the user of the third telephone target).  Tr. at 35.

20. Between November 27, 2012, and Saturday, December 1, 2012, SA Kirby was engaged in efforts to locate and secure the arrest of Ramirez (including preparation of and application for GPS warrants).  Tr. at 37-38.

21. On December 13, 2012, SA Kirby applied for and the Court entered an order to seal the recordings intercepted on the third telephone target under the extension wiretap order.  Tr. at 37-38.

22. As part of the application for sealing, SA Kirby noted that:

> On December 3, 2012, government counsel contacted the court regarding sealing the recordings.  Government counsel was advised that the court would be unavailable for sealing until December 13, 2012.  In the interim the recordings have been kept in the custody of HIS Special Agent Shawn Kirby to ensure that the recordings are protected from tampering and to prevent unauthorized disclosure.

Tr. at 39.

# PROPOSED CONCLUSIONS OF LAW

In his motion before the Court, Ramirez seeks the suppression of telephone conversations involving him that were intercepted under various wiretaps because such conversations were illegally intercepted in that:

(1) the wiretap order of August 31, 2012 and wiretap extension order of November 2, 2012, failed to specify the official at the Department of Justice who authorized the application in violation of 18 U.S.C. § 2518(4);

(2) the conversations intercepted under the orders of August 31, 2012, September 25, 2012, and November 2, 2012, were not immediately sealed in violation of 18 U.S.C. § 2518(8)(a); and

(3) the applications for the wiretap orders of August 31, 2012, September 25, 2012, and November 2, 2012, failed to include a full and complete "necessity" statement in violation of 18 U.S.C. §§ 2518(1)(c), (3)(c).

For the reasons set out herein, the Court rejects each of Ramirez' legal arguments. The Court will briefly address each argument.

### A. Failure of the wiretap orders to specify the DOJ authorizing official.

The federal wiretap statute was first enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. 90–351, 82 Stat. 212-23, *codified at* 18 U.S.C. §§ 2510-20. The law has dual purposes: "(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." S. Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968–2 U.S.C.C.A.N. 2112, 2153. The statute broadly prohibits wiretaps "[e]xcept as otherwise specifically provided in this chapter." 18 U.S.C. § 2511(1). To that end, the law mandates detailed procedures that law enforcement officials must follow in applying for a wiretap order [18 U.S.C. §§ 2516, 2518(1)] as well as specific findings that a judge must make in

issuing a wiretap order [18 U.S.C. § 2518(3)]. The statute further specifies in detail the substantive provisions of the wiretap approval order [18 U.S.C. § 2518(4)] and it limits the duration of the order and any extension order [18 U.S.C. § 2518(5)]. Finally, the statute prohibits the use of wiretap evidence in any trial "if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515. Section 2518(10)(a) defines the disclosures prohibited by § 2515 and the standards for suppressing wiretap evidence. *United States v. Giordano,* 416 U.S. 505 524, 94 S.Ct. 1820, 1831 (1974).

With regard to an order issued by a court under the federal wiretap statute, the law provides:

> Each order authorizing or approving the interception of any wire, oral, or electronic communication under this chapter shall specify--
>
> (a) the identity of the person, if known, whose communications are to be intercepted;
>
> (b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;
>
> (c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;
>
> (d) the identity of the agency authorized to intercept the communications, <u>and of the person authorizing the application</u>; and
>
> (e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

5

18 U.S.C. § 2518(4) (*emphasis added*).  In this case, there is no dispute that (although an appropriate[2] DOJ official did authorize the subject wiretaps and the applications for the order did identify the DOJ official) the respective court orders did not identify the person from DOJ authorizing the application.  Indeed, the Government concedes that the orders technically violated 18 U.S.C. § 2518(4)(d).  Thus, the issue is whether this violation mandates suppression.[3]

In determining whether suppression of wiretap evidence is warranted, courts must examine whether the violated statutory requirement occupies "a central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance." *United States v. Chavez,* 416 U.S. 562, 578, 94 S.Ct. 1849, 1857 (1974).  To that end, the Supreme Court has concluded that suppression of wiretap evidence is required where a wiretap application is not authorized by a proper DOJ official [*Giordano*], but suppression is unwarranted where the application for wiretap merely misidentifies the authorizing DOJ official. [*Chavez*].  Relying on these Supreme Court decisions, the federal circuits have held that 18 U.S.C. § 2518(10)(a) does not require suppression if the facial insufficiency of the wiretap order is no more than a technical defect.  *See*, *e.g., United States v. Traitz,* 871 F.2d 368, 379 (3d Cir. 1989); *United States v. Swann,* 526 F.2d 147, 149 (9th Cir. 1975); *United States v. Joseph,* 519 F.2d 1068, 1070 (5th Cir. 1975); *United States v. Vigi,* 515 F.2d 290, 293 (6th Cir. 1975).  In *United States v. Moore*, 41 F.3d 370 (8th Cir. 1994), the Eighth Circuit reached a similar conclusion.

---

[2]  The federal wiretap statute requires that wiretap applications must be authorized by the Attorney General or other such designated authority specifically enumerated in the statute. 18 U.S.C. § 2516(1).

[3]  According to the statutory scheme for federal wiretaps, a court may suppress evidence acquired through wiretapping, upon motion of "[a]ny aggrieved person" if "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a).

In *Moore,* the Eighth Circuit concluded that a district court erred in suppressing the wiretap evidence on the basis that the order authorizing the interception was not signed by the judge. In so ruling, the court found:

> Because the statute does not expressly require a signed order, our inquiry must focus on whether the absence of [the judge's] signature in this case violated a core statutory requirement, or was a mere technical defect. The record reveals compliance with all the fundamental statutory safeguards that protect against unauthorized or unwarranted wiretap surveillance. The application was authorized [and the] application met the requirements of § 2518(1). [The judge] made the findings required by § 2518(3) before deciding to approve the application. . . . On the facts of this case, the unsigned order was a technical defect.

*Id*. at 375. Based on *Moore*, the Government argues that the omission of the authorizing DOJ official from the wiretap orders in this case is a mere technical defect as delineated by *Moore*. More recently, in *United States v. Lomeli*, 676 F.3d 734, 736 (8th Cir. 2012), the Eighth Circuit revisited the concept of technical defects in a wiretap suppression motion. In *Lomeli*, the court found that a defect was not a mere technicality and that suppression was warranted. The reasoning of the *Lomeli* court is instructive. In *Lomeli*, the defendant established that both the <u>application</u> for a wiretap as well as the ensuing wiretap order did not specifically identify the DOJ official authorizing the application. *Id*. at 736-37. The court concluded that the omission was not technical, reasoning:

> The authorizing judge in the instant case had no way of knowing the name of the actual, statutorily designated official that had indeed authorized the application even though the application states as much in general terms – one of the core components of this legislation. And, the government offered no evidence (such as was received in other cases) that the judge indeed knew the identity of the appropriate authorizing official, or that the name of the statutorily designated official was otherwise disclosed. Such evidence would have demonstrated compliance with all the fundamental statutory safeguards that protect against unauthorized or unwarranted wiretap surveillance.

*Id*. at 741.

7

Unlike the facts of *Lomeli*, the judge issuing the wiretap orders in this case did know the identity of the appropriate authorizing official, as evidenced by the applications for the wiretap orders. Based on the reasoning of *Moore* and *Lomeli*, this Court concludes that the violations of 18 U.S.C. § 2518(4)(d) of the federal wiretap statute by the omission of the identity of the authorizing official in the respective wiretap orders in this case were merely technical and do not warrant suppression. *Accord United States v. Radcliff,* 331 F.3d 1153, 1160-63 (10th Cir. 2003) (denying suppression because even though the name of the authorizing official was omitted from the wiretap order, there was no dispute that the applications identified the appropriate DOJ individual); *United States v. Fudge,* 325 F.3d 910, 917-18 (7th Cir. 2003) (same).

### B. Delays in formal sealing

As noted *supra*, the federal wiretap law sets forth the procedures that law enforcement officers are to follow when using electronic surveillance, including wiretaps, during the course of an investigation. In part, the law requires that "[i]mmediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." 18 U.S.C. § 2518(8)(a). If the recordings are not sealed immediately and the government cannot provide a satisfactory explanation for the delay, the contents of the recordings and all of the evidence derived therefrom must be suppressed. *United States v. Feiste,* 961 F.2d 1349, 1350 (8th Cir. 1992) (*quoting* 18 U.S.C. § 2518(8)(a)). To provide a satisfactory explanation, the government must explain not only why a delay in sealing occurred but also why the delay is excusable. *United States v. Ojeda Rios,* 495 U.S. 257, 264, 110 S.Ct. 1845, 1850 (1990). In this case, the Court finds the Government's explanations satisfactory and concludes that the delays are excusable.

8

The first contested sealing involved the wiretap authorized by the order of August 31, 2012. Interceptions under that order were terminated on Saturday, September 29, 2012. The government filed an application to seal with the Court on October 4, 2012 (the Court signed the order to seal the next day). Because the wiretap order expired on a weekend, it was not until Monday, October 1, 2012, that an ICE Technical Enforcement Officer or Designated Technical Agent was available to finalize the recording disks, eject them from the system, and present a primary disk to SA Kirby to present to the Court for sealing. On Tuesday, October 2, 20102, SA Kirby was unavailable to present the sealing application due to case related duties. On Wednesday, October 3, the Court was unavailable. The Government then submitted a sealing application on Thursday, October 4, 2012. The delay, under these facts, was excusable. *Compare United States v. Maxwell*, 25 F.3d 1389, 1395 ("Intervening weekends, holidays, and the unavailability of the issuing judge are satisfactory explanations for slight delays in presenting wiretap recordings for sealing.").

The second contested sealing involved the wiretap authorized by the order of September 25, 2012. Interceptions under that order were terminated on Thursday, October 25, 2012. The government applied for and received an order to seal on Tuesday, October 30, 2012. Due to the intervening weekend and the necessary internal process of ICE, the court finds this five-day delay excusable. *Compare United States v. Ardito,* 782 F.2d 358, 362–63 (2d Cir. 1986) (two-day intervening holiday and need to prepare paperwork provided adequate explanation for five-day delay).

The final contested sealing involved the wiretap authorized by the order of November 2, 2012. Interceptions under that order were terminated on Tuesday, November 27, 2012. Thereafter between that date and December 1, 2012, SA Kirby was actively involved in efforts to

9

locate and arrest Ramirez (including preparation of GPS warrants).  Ramirez was arrested on Saturday, December 1, 2012.  On Monday, December 3, 2012, the government contacted the Court about obtaining an order to seal and was informed that the Court would be unavailable until Thursday, December 13, 2012.  On that date, the Court signed the order to seal. Although the period is somewhat long, the Court nonetheless concludes that the delay was excusable under the unique facts established.

### C.  The necessity requirement

Ramirez argues that in seeking the various wiretap authorizations, the government failed to satisfy the necessity requirement of 18 U.S.C. § 2518 and, therefore, the Court must suppress the evidence obtained as a result of the intercepted communications.  The necessity finding made prior to a district court's authorization of a wiretap is a factual determination.  *United States v. Thompson,* 210 F.3d 855, 859 (8th Cir. 2000).  The necessity requirement of Section 2518 insures "'that wiretaps are not routinely employed as the initial step in an investigation.' " *Id.* at 858-859 (*quoting United States v. Maxwell,* supra, 25 F.3d at 1394).  To satisfy the requirement, an application requesting a wiretap order must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).  *See also Thompson,* 210 F.3d at 858. Having reviewed the affidavits supporting the applications, the Court concludes that they sufficiently set forth a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

In this case, the subject applications discussed prior investigative techniques used including physical surveillance, undercover officers, confidential sources, grand jury subpoenas, subject interviews, pen registers, search warrants, trash searches, pole cameras, and financial

investigations. Nonetheless, law enforcement officers were still having difficulties in establishing the contours and players in the large drug trafficking enterprise. As succinctly noted by the Eighth Circuit in finding the necessity requirement satisfied in another wiretap case:

> The wiretap was requested for the purpose of discovering the full scope of the conspiracy, the full extent of the criminal activities, and to identify and successfully prosecute each member of the organization. If law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied.

*United States v. Jackson,* 345 F.3d 638, 644 (8th Cir. 2003).

In accordance with the foregoing discussion, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS WITH SUGGESTIONS (Doc. #212) filed on August 7, 2014, by defendant Jose Luiz Ramirez.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

              */s/ John T. Maughmer*
              **John T. Maughmer**
            **United States Magistrate Judge**